**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CV-62068-RUIZ/STRAUSS**

**CHRISTIN BILOTTI,**

     Plaintiff,

v.

**FLORIDA DEPARTMENT OF CORRECTIONS,**

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [DE 1], filed by Petitioner, Christin Bilotti, on November 7, 2022. This case has been referred to me, pursuant to 28 U.S.C. § 636(b) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Petition. *See* [DE 11]. I have reviewed the Petition, the briefing thereon [DE 3, 6, 10], and the record in this case.[1] For the reasons discussed herein, I respectfully **RECOMMEND** that the Petition [DE 1] be **DENIED**.

## I. GROUNDS RAISED IN PETITION (INEFFECTIVE ASSISTANCE OF COUNSEL)

1.     Defense counsel provided ineffective assistance of counsel by failing to properly preserve the issue related to the State's religion-based strike for direct appeal.

---

[1] Citations to exhibits (*e.g.*, Ex. 2) refer to exhibits contained in the Appendix [DE 8-1]. When specific pages of exhibits are cited, however, I use the citation "R. [page]." By way of example, "R. 410" refers to page 410 of DE 8-1.

2.     Defense counsel provided ineffective assistance of counsel by failing to argue that the jury was erroneously instructed on the charge of second degree murder.

3.     Appellate counsel provided ineffective assistance of counsel by failing to argue on direct appeal that the trial court erred by accepting the jury's legally inconsistent verdicts.

## II. <u>BACKGROUND</u>

In 2008, Christin Bilotti ("Petitioner"), Michael Bilotti (Petitioner's father), John Pacchiana, and two others were indicted on charges of Murder in the First Degree (Count I) and Conspiracy to Commit Murder in the First Degree (Count II). Ex. 2.  On May 29, 2015, a jury found Petitioner guilty on Count I of a lesser included crime of Second Degree Murder, and it found Petitioner not guilty on Count II (no lesser included crimes were presented for Count II). Ex. 6.  Petitioner was subsequently sentenced to 30 years in prison followed by 2 years on community control and 8 years of probation.  Ex. 7; Ex. 8.

Petitioner then filed an appeal.  Ex. 15.  Florida's Fourth District Court of Appeal ("Fourth DCA") reversed that conviction.  *See* Ex. 21; Ex. 23.  Following the Fourth DCA's reversal, the State filed a Notice to Invoke Discretionary Jurisdiction, seeking review by the Florida Supreme Court.  Ex. 24.  On May 22, 2020, the Florida Supreme Court entered an Order accepting jurisdiction, quashing the Fourth DCA's decision, and remanding the matter to the Fourth DCA "for reconsideration upon application of our decision in *State v. Pacchiana*, 289 So. 3d 857 (Fla. 2020)."  Ex. 28.  On June 17, 2020, the Fourth DCA affirmed Petitioner's conviction and sentence. Ex. 29.  The mandate followed on July 17, 2020.  Ex. 30.

On September 15, 2020, Petitioner filed a Motion for Reduction of Sentence pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure.  Ex. 31.  The state trial court denied that motion on October 14, 2020.  Ex. 33.  Subsequently, on July 23, 2021, Petitioner filed a Petition

Alleging Ineffective Assistance of Appellate Counsel pursuant to Rule 9.141(d) of the Florida Rules of Appellate Procedure ("Rule 9.141(d) Petition"). Ex. 35. Therein, Petitioner raised four arguments, including the argument she raises in the Ground III of her Petition in this case. On August 16, 2021 – while Petitioner's Rule 9.141(d) Petition was pending – Petitioner filed a Motion for Postconviction Relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion"). Ex. 39. Therein, Petitioner raised, *inter alia*, the arguments raised in Grounds I and II of her Petition in this case.

Petitioner's Rule 9.141(d) Petition was denied (by the Fourth DCA) – without any rationale – on November 9, 2021, and her Rule 3.850 Motion was denied (by the state trial court) on November 15, 2021. Ex. 38; Ex. 41. In denying the Rule 3.850 Motion, the state trial court "adopt[ed] the reasoning as set forth in the response of the State." Ex. 41; *see also* Ex. 40 (State's response). On November 29, 2021, Petitioner filed a Motion for Rehearing concerning the denial of her Rule 3.850 Motion. Ex. 42. The state trial court denied Petitioner's Motion for Rehearing on February 9, 2022, stating that it stood by its Order denying Petitioner's Rule 3.850 Motion, and further stating that it "adopt[ed] all reasoning set forth in the State's response to [Petitioner's] Motion for Rehearing." Ex. 44; *see also* Ex. 43 (State's response to Motion for Rehearing). Petitioner then appealed the denial of her Rule 3.850 Motion and the denial of her Motion for Rehearing. Ex. 45. On August 25, 2022, the Fourth DCA issued a *per curiam* affirmance, and the mandate followed on September 23, 2022. Ex. 48; Ex. 49. Subsequently, on November 7, 2022, Petitioner filed the instant Petition.

### III. LEGAL STANDARDS

#### A. AEDPA

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  As amended by AEDPA, § 2254(a) permits a federal court to issue "a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" if that custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  A deferential standard applies, however, to federal courts' review of petitions for habeas relief due to "the State's interest in the finality of convictions that have survived direct review within the state court system" and based upon principles of "comity and federalism." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993) (citations omitted) ("Federal intrusions into state criminal trials frustrate both the States' sovereign power . . . and their good faith attempts to honor constitutional rights.").

Indeed, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013).  Relevant limitations on habeas relief are set forth in § 2254(d), which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A federal habeas court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Furthermore, a state court may adjudicate a claim "on the merits" without issuing a formal opinion or outlining its reasoning.  *Harrington*, 562 U.S. at 99.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.*  Furthermore, when a state court does not include any reasons for the denial of a collateral attack, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

The "contrary to" prong of § 2254(d)(1) means that a state court decision "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite] result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  In other words, "the state court's decision must be substantially different from the relevant [Supreme Court] precedent." *Id.*

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "The focus of the . . . inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.*  "[A] federal habeas court may not issue the writ simply because [the] court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Error correction is the function of state-level appeals, whereas "[f]ederal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citation and internal quotation marks omitted). Thus, "[t]o satisfy [the 'unreasonable application' prong's] high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (citation and internal quotation marks omitted).

An alternative avenue for habeas relief is provided in § 2254(d)(2), which applies when the state court's determination of the facts was unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "'[A] determination of a factual issue made by a State court shall be presumed to be correct,' and the prisoner bears 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1264 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(e)(1)); *but see Burt*, 571 U.S. at 18 ("We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1).").

As with § 2254(d)(1), a federal habeas court "accord[s] the state trial court substantial deference" for claims brought under § 2254(d)(2). *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). Therefore, "the 'unreasonable determination of the facts' prong does not permit habeas relief 'merely because [the habeas court] would have reached a different conclusion in the first instance' or if 'reasonable minds reviewing the record might disagree about the finding in question.'" *Smith v. Sec'y, Dep't of Corr.*, 800 F. App'x 776, 779-80 (11th Cir. 2020) (quoting *Brumfield*, 576 U.S. at 313-14). For a federal court to grant relief under § 2254(d)(2), just like with § 2254(d)(1), "the

state court's [factual] determination must be 'objectively unreasonable.'" *Landers v. Warden, Atty. Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Objectively unreasonable means more than "merely wrong; even clear error will not suffice." *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016) (citation and internal quotation marks omitted). Therefore, even if a state postconviction court does make a factual error, its decision should still be affirmed if there is a sufficient factual basis to support its conclusion. *See Pineda v. Warden*, 802 F.3d 1198 (11th Cir. 2015).

In sum, "AEDPA's requirements reflect a presumption that state courts know and follow the law." *Woods*, 575 U.S. at 316 (citation and internal quotation marks omitted). Therefore, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Indeed, section 2254(d)'s "highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (citation omitted). "This is especially true for claims of ineffective assistance of counsel . . . in order to afford 'both the state and the defense attorney the benefit of the doubt.'" *Woods*, 575 U.S. at 316-17 (citation omitted).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). "[D]efendants in state court prosecutions have such right under the Fourteenth Amendment." *Minton v. Sec'y Dep't of Corrs.*, 271 F. App'x 916, 917 (11th Cir. 2008). The Constitution, however, "does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt*, 571 U.S. at 24. When assessing counsel's

performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result of that deficient performance. *Id.* at 687-88. To establish deficient performance, a petitioner must show that, "in light of all the circumstances, [counsel's performance was] outside the wide range of professionally competent assistance." *Id.* at 690; *see also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) ("To establish deficient performance, a defendant must show that his counsel's representation fell 'below an objective standard of reasonableness in light of prevailing professional norms' at the time the representation took place." (citation omitted)). A court's review of performance should focus "not [on] what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. *Id.* at 1317. "Thus, no absolute duty exists to investigate particular facts or a certain line of defense." *Id.* The test for ineffectiveness is not whether counsel could have done more nor whether the best criminal defense attorneys might have done more. *Id.* at 1313 n.12. Instead, to overcome the presumption that assistance was adequate, "a petitioner must 'establish that *no competent counsel* would have taken the action that his counsel did take.'" *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014) (quoting *Chandler*, 218 F.3d at 1315).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). Counsel is also not required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

While AEDPA's substantial deference applies to all issues raised in the instant Petition, an additional layer of deference applies to a federal habeas court's review of claims of ineffective assistance of counsel under *Strickland*. *Cullen*, 563 U.S. at 190 ("Our review . . . is thus 'doubly deferential.' We take a 'highly deferential' look at counsel's performance through [§ 2254(d)'s] 'deferential lens.'" (internal citations omitted)); *but see Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1333-36 (11th Cir. 2013) (Jordan, J., concurring) (explaining that double deference to a state court's adjudication of a *Strickland* claim applies only to *Strickland*'s performance prong, not to the prejudice inquiry). Under the "doubly deferential standard" applicable to ineffective assistance of counsel claims, "the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1126 (11th Cir. 2012) (citation omitted). "[I]f, at a minimum, fairminded jurists could disagree about the correctness of the state court's decision, the state court's application of *Strickland* was not unreasonable and AEDPA precludes the grant of habeas relief." *Id.* (citation omitted). Ultimately, the requisite "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in

which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 911 (11th Cir. 2011).

## IV. <u>ANALYSIS</u>[2]

As noted above, Petitioner raises three grounds in her Petition.  In its Response [DE 6] to the Petition, in addition to responding to the three grounds raised by Petitioner, the State contends that the Petition should be dismissed as untimely.  In her Reply [DE 10], Petitioner replies to the State's timeliness argument but does not present any further argument in support of the three grounds raised in her Petition.  As discussed in Part A below, the State's timeliness challenge fails. Nonetheless, as discussed in Part B below, the Petition should be denied on the merits.  In other words, the three grounds Petitioner raises in her Petition do not merit habeas relief.

### A.  TIMELINESS

The Petition was timely filed.  The AEDPA "sets a one-year statute of limitations for filing a federal habeas petition that challenges a state conviction."  *Morris v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1351, 1352 (11th Cir. 2021) (citing 28 U.S.C. § 2244(d)(1)).  However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under" § 2244(d).  28 U.S.C. § 2244(d)(2).  In other words, the limitations period is tolled during such time.  *See Morris*, 991 F.3d at 1354 ("[A]s long as such a properly filed motion is pending, the federal statute of limitations is tolled.").

---

[2] As a preliminary matter, I find (and the State does not dispute) that Petitioner has exhausted the remedies available in state court.

Absent a situation that falls under § 2244(d)(1)(B)-(D) – this case does not fall under those subsections – "[t]he limitations period begins to run on the date the petitioner's conviction becomes 'final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Phillips v. Warden*, 908 F.3d 667, 671 (11th Cir. 2018) (quoting 28 U.S.C. § 2244(d)(1)(A)). Because Petitioner did not file a petition for certiorari to the United States Supreme Court, her conviction became final at the "expiration of the time for seeking such review." *Id.* at 672 (citing *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012)). "A defendant has 90 days from the judgment of the state court of last resort to file a petition for a writ of certiorari in the Supreme Court of the United States." *Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) (citing Sup. Ct. R. 13.1).

Here, Petitioner contends that she filed her Petition 38 days prior to the deadline to do so. The State, however, contends that the Petition was filed 17 days after the deadline. Two issues account for the 55-day discrepancy between the parties' calculations. First, Petitioner argues that her conviction became final on September 15, 2020, which was 90 days after the Fourth DCA affirmed her conviction and sentence on June 17, 2020. The State, however, argues that Petitioner's conviction became final on August 20, 2020, which was 90 days after the Florida Supreme Court quashed the Fourth DCA's initial decision on May 22, 2020. Thus, this first dispute (regarding when the 90-day clock began to run) accounts for 26 days of the 55-day discrepancy between the parties. Second, the parties dispute whether the statute of limitations was tolled for the 29-day period between when Petitioner filed her motion to reduce sentence on September 15, 2020 and when that motion was denied on October 14, 2020. While the State does not dispute that such a motion would ordinarily toll the statute of limitations, it contends that the motion did not toll the limitations period here because the motion was untimely. Specifically, the

State contends that to be timely, Petitioner was required to file her motion to reduce sentence by July 21, 2020, which was 60 days after the Florida Supreme Court quashed the Fourth DCA's initial decision on May 22, 2020.  Petitioner, on the other hand, contends that the 60-day clock began to run on July 17, 2020 (when the Fourth DCA issued its mandate in Petitioner's direct appeal), and therefore, that her motion to reduce sentence was timely filed (on September 15, 2020).

If Petitioner is correct on either issue, then her Petition is timely.  In other words, the State argues that the Petition was untimely by 17 days, so if Petitioner is correct that she had either an additional 26 days (if she is correct regarding the parties' first dispute) or an additional 29 days (if she is correct regarding the parties' second dispute), then the Petition is not time-barred.  At any rate, I agree with Petitioner on both timeliness disputes.  Therefore, I find that the Petition is timely.

As to the parties' first dispute, Petitioner is correct that the 90-day clock to file a petition for writ of certiorari did not begin to run until the Fourth DCA affirmed her conviction and sentence on June 17, 2020.  In other words, the one-year limitations period only started to run 90 days after that date – on September 15, 2020.  That is the date on which Petitioner's conviction became final because it is the date on which the time expired to file a petition for writ of certiorari with the Supreme Court.  Petitioner could not have filed a petition for writ of certiorari at the time the Florida Supreme Court entered its Order on May 22, 2020.  That is because the Florida Supreme Court did not affirm Petitioner's conviction (or otherwise enter a final decision bringing direct state appellate review to an end).  Rather, it quashed the initial decision of the Fourth DCA and remanded the matter to the Fourth DCA for reconsideration based upon an intervening decision of the Florida Supreme Court (the decision in Petitioner's co-defendant's case).  For this reason, the State's reliance on *Butler v. Sec'y, Fla. Dep't of Corr.*, 621 F. App'x 604, 606 (11th

Cir. 2015), is misplaced. In *Butler*, the Florida Supreme Court *affirmed* the defendant's conviction and sentence on direct appeal. *Id.* at 605 (citation omitted). But here, Petitioner's conviction was not *affirmed* by the Florida Supreme Court; it was not *affirmed* until June 17, 2020 (by the Fourth DCA following remand). Thus, the time for seeking review from the United States Supreme Court did not expire until 90 days later – on September 15, 2020. Therefore, Petitioner correctly argues that her conviction became final on September 15, 2020. *Cf. Williams v. Sec'y, Dep't of Corr.*, No. 6:09-CV-1809-ORL-31, 2011 WL 2173858, at *1-3 (M.D. Fla. June 2, 2011) (finding that conviction became final 90 days after affirmance by Fifth DCA on remand from Florida Supreme Court, not 90 days after Florida Supreme Court quashed earlier decision of Fifth DCA and remanded for reconsideration).

Petitioner is also correct regarding the second timeliness dispute between the parties. As indicated above, the second dispute turns on whether Petitioner's motion to reduce sentence was timely filed on September 15, 2020. According to the State, Petitioner's motion to reduce sentence was untimely under Fla. R. Crim. P. 3.800(c), which provides, in pertinent part, the following:

> A court may reduce or modify to include any of the provisions of chapter 948, Florida Statutes, a legal sentence imposed by it, sua sponte, or upon motion filed, within 60 days after the imposition, or within 60 days after receipt by the court of a mandate issued by the appellate court on affirmance of the judgment and/or sentence on an original appeal . . . or, if further appellate review is sought in a higher court or in successively higher courts, within 60 days after the highest state or federal court to which a timely appeal has been taken . . . *has entered an order of affirmance or an order dismissing the appeal and/or denying certiorari.*

Fla. R. Crim. P. 3.800(c) (emphasis added).

According to the State, Petitioner was required to file her motion to reduce sentence by July 21, 2020 – 60 days after, in the State's words, "the Florida Supreme Court, on review of Petitioner's direct appeal, entered its final order affirming Petitioner's case and quashing the 4th DCA opinion on May 22, 2020." [DE 6] at 16. But contrary to the State's misstatement, *the*

13

*Florida Supreme Court did not enter a final order of affirmance*. As noted above, it simply quashed the Fourth DCA's decision and remanded the matter to the Fourth DCA for reconsideration. The Florida Supreme Court's May 22, 2020 Order was not "an order of affirmance or an order dismissing the appeal and/or denying certiorari." Fla. R. Crim. P. 3.800(c). Therefore, the plain language of the portion of Rule 3.800(c) on which the State relies clearly does not apply. Rather, because Petitioner did not pursue a further appeal following the Fourth DCA's affirmance upon remand, Petitioner was required to file her motion to reduce sentence "within 60 days after the imposition, or within 60 days after receipt by the court of a mandate issued by the appellate court on affirmance of the judgment and/or sentence on an original appeal." Fla. R. Crim. P. 3.800(c). By filing her motion on September 15, 2020 – 60 days after the imposition of the mandate – Petitioner did just that. As such, her motion to reduce sentence was timely. Therefore, the statute of limitations was tolled during the pendency of that motion.

For the foregoing reasons, the Petition is not time-barred.

**B. MERITS**[3]

**1. Ground I**

The Petition should be denied as to Ground I. By way of background,[4] during jury selection, defense counsel objected to a peremptory strike of a prospective juror on the basis of

---

[3] As an initial matter, for each ground of her Petition, Petitioner states in a conclusory manner that the "state court's denial [of Petitioner's Rule 3.850 Motion] is (1) contrary to, or involved an unreasonable application of, clearly established Federal law and (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." [DE 3] at 18, 23, 26. However, Petitioner does not cite any Supreme Court decisions that the state court's decision could be considered "contrary to," and she does not make any specific § 2254(d)(2) argument. Rather, based on the arguments Petitioner makes in each ground of the Petition, her arguments appear to be based on the "unreasonable application" prong of § 2254(d)(1) – specifically, that the state court unreasonably applied *Strickland*.

[4] The background included in this paragraph is taken from the decisions of the Florida Supreme Court and Fourth DCA in an appeal by Petitioner's co-defendant. *See generally State v.*

race (demanding that the State provide a "race neutral reason" while also protesting that the strike was "religious based").  Days later, but before the jury was sworn, defense counsel filed a motion seeking relief based on that peremptory strike, arguing that the strike impermissibly sought to excuse the juror on the basis of her religion.  The trial court denied the motion.  On appeal, the Fourth DCA reversed the trial court's decision and remanded the matter for a new trial.  However, the Florida Supreme Court quashed the Fourth DCA's decision, finding that defense counsel failed to properly preserve a religion-based objection to the strike of the juror.  Upon remand, the Fourth DCA issued an affirmance in accordance with the Florida Supreme Court's decision.  In other words, Petitioner was unsuccessful in challenging the State's religion-based strike on direct appeal because defense counsel failed to preserve the issue.  In her Rule 3.850 Motion and in Ground I of her Petition in this case, Petitioner raises an ineffective assistance of counsel argument based on her trial counsel's failure to preserve the argument that the State improperly used a peremptory challenge to strike the juror on the basis of religion.  Simply stated, Ground I concerns the failure of trial counsel to preserve a *Batson* challenge (or at least a *Batson*-like challenge) for appeal.[5]

Because the Fourth DCA – the last state court to consider the argument raised in Ground I of the Petition – summarily affirmed the denial of Petitioner's Rule 3.850 Motion, *see* Ex. 48, this Court must look through the Fourth DCA's unexplained decision "to the last related state-court decision that does provide a relevant rationale."  *Carey v. Dep't of Corr.*, 57 F.4th 985, 992 (11th

---

*Pacchiana*, 289 So. 3d 857 (Fla. 2020); *Pacchiana v. State*, 299 So. 3d 14 (Fla. 4th DCA 2020); *Pacchiana v. State*, 240 So. 3d 803 (Fla. 4th DCA 2018), *decision quashed*, 289 So. 3d 857 (Fla. 2020).  Petitioner's conviction was ultimately affirmed by the Fourth DCA based on the Florida Supreme Court's decision in her co-defendant's case.  *See* Ex. 29.

[5] *See Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986).  "*Batson* prohibits the use of peremptory challenges to exclude people from the petit jury based on their race, as a violation of the Equal Protection Clause of the Fourteenth Amendment."  *Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1242 (11th Cir. 2014).

Cir. 2023) (quoting *Wilson*, 138 S. Ct. at 1192). Here, that is the decision of the state trial court, which, in denying Petitioner's Rule 3.850 Motion, "adopt[ed] the reasoning as set forth in the response of the State." Ex. 41.[6]  Therefore, this Court must examine the State's response to Petitioner's Rule 3.850 Motion to ascertain the relevant rationale. *See Carey*, 57 F.4th at 993.[7]

The rationale provided in the State's response to Petitioner's Rule 3.850 Motion – and thus, the state court's rationale for denying postconviction relief on this peremptory strike issue – was that Petitioner failed to establish prejudice. *See* R. 410-14. The denial does not appear to be based on the deficient performance prong of *Strickland* (the state court did not decide whether there was, or was not, deficient performance). In finding that Petitioner failed to establish prejudice, the state court relied on Florida Supreme Court precedent holding that to be entitled to postconviction relief on an ineffective assistance of counsel argument related to the failure to preserve an issue concerning the striking of a juror, *Strickland*'s prejudice prong must be established by showing that a biased juror served on the jury. *See* R. 410-14 (quoting *King v. State*, 211 So. 3d 866, 886-87 (Fla. 2017); *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007)). Ultimately, the state court

---

[6] To the extent the state trial court's Order denying Petitioner's Motion for Rehearing is considered the last state-court decision providing a relevant rationale, that Order stood by the court's prior Order denying Petitioner's Rule 3.850 Motion. Ex. 44. It also "adopt[ed] all reasoning set forth in the State's response to [Petitioner's] Motion for Rehearing," Ex. 44, but the State's response to the Motion for Rehearing primarily summarized and/or repeated the arguments made in the State's response to Petitioner's Rule 3.850 Motion. *See* Ex. 40; Ex. 43. Thus, both of the state trial court's orders – the Order denying the Rule 3.850 Motion and the Order denying the Motion for Rehearing – essentially provided the same rationale for denying postconviction relief.

[7] *See also Ether v. Dixon*, No. 20-60241-CIV, 2022 WL 1908918, at *8 (S.D. Fla. June 3, 2022) ("[S]ince the state postconviction court simply adopted the State's Postconviction Response . . . we presume that the court simply adopted that response."); *Dragic v. Inch*, No. 17-81253-CV, 2021 WL 836883, at *9 (S.D. Fla. Mar. 5, 2021) ("The Fourth [DCA] affirmed the trial court's denial without a written opinion. Since the Fourth DCA affirmed without a written decision, we 'look through' to the next reasoned decision (i.e., the trial court's Order Denying Post Conviction Relief, which incorporated the State's Response) as the presumptive reasoning of the Fourth DCA." (internal citation omitted)).

denied relief on the basis that Petitioner failed to demonstrate that a biased juror was seated on the jury.  R. 414; *see also* R. 427-28.  Based on Petitioner's failure to demonstrate such bias, the state court determined that Florida Supreme Court precedent dictated the result (i.e., finding that Petitioner failed to establish prejudice).  As discussed herein, that was a reasonable determination.

Ground I of the Petition necessitates consideration of what is required to establish prejudice under *Strickland* – in particular, prejudice on account of the failure of trial counsel to preserve an objection to the prosecution's peremptory strike of a prospective juror.  As noted above, to establish prejudice under *Strickland*, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

Petitioner first argues that the relevant prejudice inquiry here is whether trial counsel's failure to preserve the religious-based objection to the State's peremptory strike prejudiced Petitioner's *appeal* (as opposed to whether it prejudiced Petitioner's *trial*).  In support of this argument, Petitioner relies on *Davis v. Sec'y for Dep't of Corr.*, 341 F.3d 1310 (11th Cir. 2003).  Petitioner *correctly* asserts that *Davis* supports her position.  In *Davis*, the Eleventh Circuit initially considered two of its prior decisions – *Jackson v. Herring*[8] and *Eagle v. Linahan*[9] – where counsel failed to raise or preserve *Batson* challenges.  In *Jackson*, the Eleventh Circuit "required the petitioner to show some likelihood of a more favorable result *at trial* had *trial counsel*" raised a *Batson* challenge.  *Davis*, 341 F.3d at 1314 (citing *Jackson*, 42 F.3d at 1361-62) (emphasis added).  In *Eagle*, the Eleventh Circuit "required a showing of some likelihood of a more favorable result

---

[8] 42 F.3d 1350 (11th Cir. 1995).

[9] 279 F.3d 926 (11th Cir. 2001).

*on appeal* had *appellate counsel* raised a *Batson* claim." *Id.* (citing *Eagle*, 279 F.3d at 943-44) (emphasis added).  In addition to considering *Jackson* and *Eagle*, the *Davis* court found that a Supreme Court decision, *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), established that prejudice under *Strickland* "is not always fastened to the forum in which counsel performs deficiently: even when it is *trial* counsel who represents a client ineffectively in the *trial court*, the relevant focus in assessing prejudice may be the client's appeal." *Id.* at 1315.[10]  Ultimately, the Eleventh Circuit found in *Davis* that trial counsel is acting in an appellate role when counsel fails to preserve a *Batson* challenge and that "[u]nder the peculiar circumstances of this case the only effect of *trial* counsel's negligence was on Davis's *appeal*." *Id.* at 1312, 1315.  Therefore, the Eleventh Circuit held that "when a defendant raises the unusual claim that *trial counsel*, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome *on appeal* had the claim been preserved." *Id.* at 1316.

According to the State, however, Petitioner "overlooks" that a subsequent Eleventh Circuit case – *Purvis v. Crosby*, 451 F.3d 734, 736 (11th Cir. 2006) – called *Davis* into question.  [DE 6] at 21-22.  In *Purvis*, which involved counsel's failure to preserve an objection to a partial closure of the courtroom during a witness's testimony, the Eleventh Circuit explained that "*Strickland* told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal." *Purvis*, 451 F.3d at 739 (citing *Strickland*, 466 U.S. at 694-95).  The court then distinguished (and seemingly criticized) *Davis*:

---

[10] In *King*, the Florida Supreme Court noted that "[o]ther federal appellate courts have flatly rejected *Davis*'s interpretation of *Flores-Ortega*." 211 So. 3d at 887 (citing *Kennedy v. Kemna*, 666 F.3d 472, 486 (8th Cir. 2012)).

> Our reasoning and the result in *Davis* arguably were pushing things given what the Supreme Court said in *Strickland* about measuring the effect of counsel's errors at the guilt stage of a trial against the result of the trial instead of the appeal. Perhaps mindful of that, we drew our holding in *Davis* narrowly. We stressed in *Davis* that it was a case involving "peculiar circumstances" where the only effect of trial counsel's error was on the appeal, and that it was not the usual case where counsel had failed to bring an issue to the attention of the trial court at all. We carefully limited our holding to situations "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal."

*Id.* (internal citations omitted). The *Purvis* court then characterized *Davis* as recognizing a "razor thin exception." *Id.* at 740. Ultimately, the court held that "to prevail on [an] ineffective assistance claim stemming from the failure of [] trial counsel to raise an objection to the closing of the courtroom, [a petitioner] must show a reasonable probability of a different result *in the trial* if counsel had objected." *Id.* at 743 (emphasis added).

As the foregoing paragraph and the *Purvis* court's discussion of *Davis* make clear, even accepting that *Purvis* questioned the holding in *Davis*, *Purvis* did not overrule *Davis*. Nor could it under the prior-precedent rule.[11] Thus, even if, as the State suggests, *Davis* was wrongly decided, it remains good law. And *Davis* – not *Purvis* – addressed the type of situation at issue here – the failure of trial counsel to preserve a *Batson* challenge for appeal, even though counsel had brought the issue to the trial court's attention. Therefore, if this Court were the first court reviewing the issue of prejudice (meaning if the state court had not addressed the issue), it would

---

[11] *See Andrews v. Biggers*, 996 F.3d 1235, 1236 (11th Cir. 2021) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even [if] convinced it is wrong." (quoting *United States v. Steele*, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc))); *United States v. Johnson*, 981 F.3d 1171, 1192 (11th Cir. 2020) ("Under our prior-precedent rule, we must follow the precedent of earlier panels unless and until the prior precedent is overruled or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc."); *CSX Transportation, Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1338 (11th Cir. 2017) ("[W]hen we have conflicting [precedents], we follow our oldest precedent." (quoting *United States v. Madden*, 733 F.3d 1314, 1319 (11th Cir. 2013))).

be bound by *Davis* to find prejudice (assuming trial counsel's failure to preserve the religious-based objection to the State's peremptory challenge qualifies as deficient performance). That is because the preservation error prejudiced Petitioner's *appeal*. Prejudice to Petitioner's *appeal* is evident given that the Fourth DCA initially reversed Petitioner's conviction based on the religious-strike issue. The Fourth DCA's determination that Petitioner should prevail on the merits of this issue was only quashed because the Florida Supreme Court found that trial counsel failed to preserve the issue. Thus, assuming deficient performance, that deficient performance prejudiced Petitioner *under Davis* because the Fourth DCA's initial decision on the merits shows that had counsel adequately preserved the issue, Petitioner would have prevailed on appeal (absent an en banc Fourth DCA or the Florida Supreme Court disagreeing – on the merits – with the Fourth DCA panel that initially reversed Petitioner's conviction). In other words, there was far more than "a reasonable likelihood of a more favorable outcome *on appeal* had the claim been preserved." *Davis*, 341 F.3d at 1316. Therefore, if this Court were the first court reviewing the issue of prejudice, it would be bound by *Davis* to find that *Strickland*'s prejudice prong is satisfied.

But this Court is not reviewing the issue of prejudice anew. Here, the state court plainly denied Petitioner's Rule 3.850 Motion on prejudice grounds. And it did so based on Florida Supreme Court precedent (*King* and *Carratelli*) that it was bound to follow. Although *King* and *Carratelli* (and the state court's prejudice determination in this case) are "contrary to" *Davis*, "*Davis* is not clearly-established federal law under the AEDPA." *Carratelli v. Stepp*, 382 F. App'x 829, 832 (11th Cir. 2010). In fact, *Davis* conflicts with other federal appellate decisions. *See supra* note 10. The fact that other federal courts of appeals and the Florida Supreme Court have disagreed with *Davis* is further indication that reasonable jurists could disagree as to how to apply *Strickland* in this circumstance.

Thus, not only did the state court reasonably find no prejudice, it was obligated to do so. Because the state court's decision to follow Florida Supreme Court decisions that it was bound to follow (and that were not "contrary to" clearly-established federal law) was undoubtedly reasonable (and compelled), this Court owes AEDPA deference to that decision. Significantly, it is this precise reality that distinguishes this matter from *Davis*. That is because in *Davis*, "the Florida courts failed to resolve the merits of Davis's claim"; therefore, the Eleventh Circuit found in *Davis* that "the present controversy falls outside of § 2254(d)(1)'s requirement that we defer to state court decisions that are not contrary to, or an unreasonable application of, clearly established federal law." *Davis*, 341 F.3d at 1313. On the contrary, in this case, the state court resolved Petitioner's claim on the merits, denying it on prejudice grounds. Notably, at least two persuasive (albeit non-binding) Eleventh Circuit decisions found *Davis* to be inapposite for the same reason. *See Mobley v. Sec'y, Fla. Dep't of Corr.*, 825 F. App'x 651, 654 (11th Cir. 2020); *Carratelli*, 382 F. App'x at 831-32. In fact, in *Mobley*, the Eleventh Circuit found that the state court's decision to find no prejudice based on the petitioner's failure to satisfy Florida's actual bias standard – the standard set forth in *King* and *Carratelli* (among other Florida cases) – was reasonable.[12] Like the state court in *Mobley*, the state court in this case reasonably evaluated *Strickland* prejudice in accordance with binding Florida law.[13]

---

[12] *See Mobley*, 825 F App'x at 655 ("Florida appellate courts have applied this actual bias standard to ineffective assistance claims involving counsel's failure to object to potentially racially motivated peremptory strikes. Mobley did not attempt to establish that a juror placed on the jury despite his *Batson* challenge was actually biased against him. Thus, the state habeas court did not unreasonably apply *Strickland* in concluding that Mobley could not demonstrate prejudice and denying his ineffective assistance of counsel claim." (internal citation omitted)).

[13] Petitioner's second prejudice argument is essentially that even if the state court reasonably did not follow *Davis* – by looking at whether trial counsel's preservation error prejudiced Petitioner's *appeal* in accordance with *Davis* – "the state court's prejudice analysis should have at least been focused on whether the outcome of [Petitioner's] trial would have been different if the trial court had denied the strike and the stricken juror sat on the jury." [DE 3] at 19. But this argument fails

Nevertheless, Petitioner contends that even applying Florida's actual bias prejudice standard, the state court unreasonably concluded that Petitioner failed to establish prejudice. Under that standard, "a defendant must show that a biased juror served during the defendant's trial to satisfy *Strickland*'s requirement of showing a reasonable probability of a more favorable result." *King*, 211 So. 3d at 887 (citing *Carratelli*, 961 So. 2d at 323-24).  In other words, a defendant "must demonstrate that 'one who was actually biased against the defendant sat as a juror,' meaning that the juror had a 'bias-in-fact that would prevent service as an impartial juror.'" *Patrick v. State*, 246 So. 3d 253, 263 (Fla. 2018) (quoting *Carratelli*, 961 So. 2d at 323-24); *see also Carratelli*, 382 F. App'x at 833 ("The defendant must demonstrate that the juror was not impartial, meaning he or she was biased against the defendant, and the bias was evidenced on the face of the record." (citing *Carratelli*, 961 So. 2d at 324)).  "The evidence of the juror's actual bias must amount to 'something more than mere doubt about that juror's impartiality.'" *Id.* (citation omitted). "Otherwise, the defendant cannot show prejudice." *Id.* (citing *Carratelli*, 961 So. 2d at 324).

Notwithstanding what is required for a Petitioner to demonstrate actual bias in this context, Petitioner merely contends in her Petition, in a conclusory fashion, that she "pleaded a biased juror was seated on the jury" by noting the following (in a footnote) in her Motion for Rehearing:

> If given the opportunity, Bilotti believes that the claim can be amended in good faith. See, for example, Bilotti's Motion to Interview Jurors filed on June 8, 2015 and transcripts of August 28, 2015 hearing at p. 3-19 where there is discussion/evidence of juror misconduct/bias based on external factors. Additionally, numerous issues arose during jury selection.

---

for the same reasons discussed above.  Specifically, the state court reasonably followed Florida Supreme Court precedent that it was bound to follow (precedent that is not contrary to United States Supreme Court precedent).  Therefore, this Court must defer to the state court's reasonable prejudice determination.

[DE 3] at 19; *see also* R. 423 n.1.  In its response to Petitioner's Motion for Rehearing, the State addressed the foregoing footnote stating, "[n]othing in this claim itself or the accompanying footnote identifies any juror who was actually biased against the defendant in this matter."  R. 428. Again, the state court adopted the State's reasoning.  R. 433.

Notably, even in her Petition in this case, Petitioner still does not identify which juror(s), if any, was allegedly biased.  And she certainly does not show "evidence of bias" that is "plain on the face of the record."  *Carratelli*, 961 So. 2d at 324.  Significantly, "[i]n cases governed by *Carratelli*, 'the record' is the record of the voir dire conducted for jury selection."  *Martin v. State*, 322 So. 3d 25, 36 (Fla. 2021).  In other words, "the *Carratelli* rule [mandates] looking exclusively to the face of the voir dire record."  *Id.*[14]  "A *Carratelli* claim requires the postconviction court to measure counsel's performance in light of what the attorney heard from potential jurors during voir dire."  *Martin*, 322 So. 3d at 36.  "It is whether the lawyer's failure to raise a challenge resulted in a biased juror serving on the jury."  *Jenkins v. State*, 824 So. 2d 977, 982 (Fla. 4th DCA 2002). This makes sense because prejudice under *Strickland* must result from counsel's deficient performance.  Nonetheless, Petitioner points to absolutely nothing in the voir dire record to provide any indication that any juror was "actually biased" against her, much less a juror who was seated because of trial counsel's error.  Her failure to do so is fatal to her claim, and importantly, confirms that the state court reasonably found that Petitioner failed to establish actual bias.  Accordingly, this Court must defer to the state court's reasonable determination that Petitioner failed to establish prejudice.

---

[14] For this reason, Petitioner's conclusory argument that the state court "unreasonably deprived [her of] the opportunity to establish the bias of a seated juror at an evidentiary hearing," [DE 3] at 20, is of no moment.  Given that actual bias must be determined by "looking exclusively to the face of the voir dire record," *Martin*, 322 So. 3d at 36, an evidentiary hearing on the issue of actual juror bias would have served no purpose.

Although Ground I of the Petition fails because the state court reasonably found that Petitioner failed to establish prejudice, Ground I also separately fails under the deficient performance prong of *Strickland*.[15] As a preliminary matter, as noted above, the state court did not deny relief on this ground based on deficient performance (it did not appear to reach the issue of deficient performance). However, this does not relieve Petitioner of her burden to establish deficient performance to prevail on her Petition. Rather, because the state trial court did not reach the deficient performance prong, this Court conducts a plenary or *de novo* review of that prong without affording AEDPA deference. *See Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1151 (11th Cir. 2017); *Johnson v. Sec'y, DOC*, 643 F.3d 907, 930 (11th Cir. 2011); *see also Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1058 (11th Cir. 2022) (Jordan, J., concurring). Nonetheless, even without AEDPA deference, the deficient performance prong of *Strickland* is itself undoubtedly demanding.

Here, Petitioner fails to establish deficient performance. For starters, the Petition does not even address deficient performance even though Petitioner has the burden to demonstrate deficient performance to establish ineffective assistance of counsel. At any rate, as the State points out, notwithstanding the Florida Supreme Court's ultimate determination that defense counsel failed to preserve the religion-based strike argument, two (of three) Fourth DCA judges and a Florida Supreme Court justice – a justice who dissented from the decision to quash the Fourth DCA's initial decision reversing Petitioner's conviction – believed that defense counsel adequately preserved the issue. *See Pacchiana*, 289 So. 3d at 862-64 (Fla. 2020) (Labarga, J., dissenting);

---

[15] While I briefly address the performance prong, I note that this Court is not required to reach that prong given that the state court's determination that Petitioner "failed to establish prejudice was not contrary to, or an unreasonable application of, *Strickland* or based on an unreasonable determination of the facts." *Jennings v. Sec'y, Fla. Dep't of Corr.*, 55 F.4th 1277, 1293 (11th Cir. 2022).

*Pacchiana*, 240 So. 3d at 809-10; *Pacchiana*, 240 So. 3d at 820 (May, J., dissenting).  Given that a Florida Supreme Court justice and two appellate judges (on a three-judge panel) thought counsel adequately preserved the issue, it would be inappropriate to conclude that counsel's "representation fell 'below an objective standard of reasonableness in light of prevailing professional norms' at the time the representation took place."  *Cummings*, 588 F.3d at 1356.  In other words, counsel's performance does not qualify as *unconstitutionally* deficient.

For the foregoing reasons, Ground I fails because the state court reasonably found a lack of prejudice, and it also independently fails because Petitioner has not established deficient performance under *Strickland*.

## 2.  Ground II

The Petition should be denied as to Ground II.  In Ground II, Petitioner raises an ineffective assistance of counsel argument, contending that trial counsel performed deficiently by failing to object to erroneous jury instructions on the charge of second degree murder.  By way of background, the jury instructions on second degree murder – which, as noted above, was a lesser included crime on Count I of the indictment, which charged the defendants with first degree murder – included the following:

> As to Count 1 of the Indictment, to prove the lesser included crime of second degree murder, the State must prove the following three elements beyond a reasonable doubt:
>
> First, that [the victim] is dead.
>
> Second, the death was caused by the criminal act or acts of Michael Bilotti, Christin Bilotti, and John Pacchiana.
>
> And, Third, there was an unlawful killing of [the victim] by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.
>
> An "act" includes a series of related actions arising from and performed pursuant to a single design or purpose.

> An act is "imminently dangerous to another and demonstrating a depraved mind" if it is an act or series of acts that:
>
> One, a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; and, Two, is done from ill will, hatred, spite, or an evil intent; and, Three, is of such a nature that the act itself indicates an indifference to human life.
>
> *In order to convict of second degree murder, it is not necessary for the State to prove the defendants had an intent to cause death.*

[DE 9-3] at 199-200 (emphasis added); *see also* R. 34.

After providing some additional instructions, the trial court provided the following "principals" instruction:

> If a defendant helped another person or persons commit or attempt to commit a crime, the defendant is a principal and must be treated as if they had done all the things the other person or persons did if:
>
> One, the defendant had a conscious intent that the criminal act be done; and, Two, the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit or attempt to commit the crime.
>
> To be a principal, the defendant does not have to be present when the crime is committed or attempted.
>
> Now, I want to point out that this principals instruction only applies to Count 1 of the Indictment, it does not apply to conspiracy.

[DE 9-3] at 205-06; *see also* R. 40.

The jury instructions provided by the state trial court are consistent with Florida's standard jury instructions. *See* Fla. Std. Jury Instr. (Crim.) 3.5(a) (principals), 7.4 (second degree murder). Nevertheless, Petitioner contends that the jury instructions provided by the state trial court were erroneous because of the instruction – in the second degree murder instructions – that "it is not necessary for the State to prove the defendants had an intent to cause death." According to Petitioner, this instruction effectively negated the requirement – in the principals instruction – of conscious intent (by Petitioner) that the criminal act be done. *See* [DE 3] at 21. Therefore, she contends her trial counsel performed deficiently by failing to object to the instruction, which she

asserts was an erroneous instruction as a matter of Florida law. Petitioner also contends that the failure to object prejudiced her, because had the jury been "instructed that to convict [Petitioner] of second-degree murder it was necessary for the State to prove [Petitioner] knew [that her co-defendants] intended to kill" the victim, there is a reasonable probability Petitioner would have been found not guilty of second degree murder as a principal. [DE 3] at 22.

In the Petition (and in her Rule 3.850 Motion), Petitioner largely bases her argument that the jury instructions provided in her case were erroneous on *Hedgeman v. State*, 661 So. 2d 87 (Fla. 2d DCA 1995). In *Hedgeman*, the defendant appealed his conviction for second degree murder, arguing there was insufficient evidence to sustain the conviction. 661 So. 2d at 88. The court noted that the defendant "could have only been convicted of second-degree murder as a lesser included of first-degree premeditated murder, if there was sufficient evidence to establish that he was a principal to the crime." *Id.* It then explained that establishing a defendant as a principal to a crime committed by another requires proving that the defendant "intended the crime be committed and did some act to assist the other person in actually committing the crime." *Id.* (citations omitted). Ultimately, the court reversed the conviction, finding no evidence demonstrated that the defendant (1) knew the person who shot the victim intended to kill the victim that night, or (2) did some act to aid, encourage, or participate in the shooting of the victim. *Id.* at 88-89. Because such evidence was lacking, the court found that insufficient evidence existed to convict the defendant of second degree murder as a principal. *Id.*

As with Ground I, this Court must examine the reasoning provided in the State's response to Petitioner's Rule 3.850 Motion given that the state trial court denied that motion for the reasons set forth in the State's response. The State's response provided the following rationale to reject Petitioner's *Hedgeman* argument:

> [T]he reliance of the defendant on [*Hedgeman*] is misplaced, because there was no claim that the instruction on murder in the second degree was erroneous or inadequate. The court in *Hedgeman* reversed the conviction based on insufficient evidence, not on an erroneous jury instruction. Furthermore, the court in *Hedgeman* found that a conviction for murder in the second degree by a non-shooting principal could be upheld if the crime charged was a lesser included offense of murder in the first degree premeditated murder and there was sufficient evidence to prove the crime. Clearly, the defendant in this matter was charged with first degree premeditated murder, and there was sufficient evidence to prove the claim as found by the jury. In fact, the issue of sufficiency of the evidence was raised on appeal by the defendant, addressed on the merits by the State, and eventually rejected when the judgment and sentence was affirmed by the Fourth DCA after remand from the Florida Supreme Court.

R. 415-16 (internal citations omitted).

From the foregoing rationale, it is not completely clear whether the state court found that Petitioner's Rule 3.850 Motion on this jury instruction issue should be rejected on deficient performance grounds, prejudice grounds, or both. Nonetheless, Petitioner's ineffective assistance of counsel argument regarding this jury instruction issue was largely premised upon *Hedgeman*, and the state court's denial of relief (in adopting the State's response) was predicated on the finding that Petitioner's reliance on *Hedgeman* was misplaced. Thus, it appears that the state court effectively found that Petitioner failed to demonstrate an error in the jury instructions. Significantly, Petitioner's entire argument is premised on what she terms "erroneous" jury instructions. In other words, establishing that the jury instructions were "erroneous" is a necessary (but perhaps not sufficient) part of demonstrating deficient performance because, if the jury instructions were not erroneous, counsel did not perform deficiently by not objecting to them. Likewise, establishing that the jury instructions were "erroneous" is a necessary (but perhaps not sufficient) part of demonstrating prejudice. At any rate, the rationale for denying relief on the jury instruction issue appears to be that Petitioner failed to demonstrate the jury instructions were erroneous (because the rationale in the State's response indicated Petitioner's reliance on the only

case law she cited to be misplaced).  However, it is unclear whether the state court simply found that Petitioner failed to meet her burden of showing that she was entitled to postconviction relief by failing to establish that the jury instructions were erroneous, or whether the state court went a step further and actually determined that the jury instructions were correct as a matter of Florida law.

It is significant whether the state court's basis for denying postconviction relief was that the jury instructions were correct as a matter of Florida law (as opposed to simply finding that Petitioner failed to satisfy her burden under *Strickland*) because, if that was the basis for the state court's ruling, this Court would be required to defer to that ruling.  *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that appellate counsel failed to raise turns on state law." (citations omitted)).  After all, "state law is what the state courts say it is," and "it is not a federal court's role to examine the propriety of a state court's determination of state law."  *Id.* at 1299.  Nonetheless, while the state court may have concluded that the jury instructions were correct as a matter of state law, it never affirmatively made such a finding.  In other words, the State's response to Petitioner's Rule 3.850 Motion (which the state trial court adopted) never expressly stated that the jury instructions were correct.  Rather, what it expressly found was that Petitioner's reliance on *Hedgeman* was misplaced.[16]

---

[16] It is worth noting, however, that on direct appeal, the Fourth DCA rejected (albeit without explanation) the same argument Petitioner makes here about the jury instructions being erroneous. *See* R. 164-84, 292.  On her direct appeal, Petitioner did make the argument in a fundamental error context, but she relied on *Hedgeman* just as she does here.  *See* R. 164-84.  She also made a sufficiency of the evidence argument (which also relied on *Hedgeman*) on direct appeal, which the Fourth DCA also rejected, as evidenced by its affirmance.  *See* R. 164-80, 292.

Regardless, even if the state court did not deny postconviction relief based on a determination that the jury instructions were correct as a matter of state law (which, again, is not completely clear),[17] the state court reasonably distinguished *Hedgeman*. That is because, as the state court reasonably recognized, *Hedgeman* reversed a defendant's conviction based on *insufficient evidence*, not based on an erroneous jury instruction. To be sure, the State's response to Petitioner's Rule 3.850 Motion did mischaracterize *Hedgeman* in certain respects.[18] Moreover, *Hedgeman* does somewhat support Petitioner's argument that establishing the conscious intent requirement – to be guilty as a principal – meant that the State needed to show Petitioner knew her co-defendants intended to kill the victim. And that does seem to be at odds with the second-degree murder instruction that it is not necessary to prove an intent to cause death. However, it is hardly clear that *Hedgeman* alone establishes that the jury instructions in this case were erroneous, and again, the state court was not unreasonable in finding Plaintiff's reliance on *Hedgeman* misplaced on the basis that *Hedgeman* concerned a sufficiency of evidence issue rather than a jury instruction issue.

Although *Hedgeman* did not squarely address the jury instruction argument Defendant makes here, one former Florida Supreme Court justice has persuasively rejected the same argument Defendant is making. Specifically, Justice (then-Judge) Pariente's dissent in *Jamerson*

---

[17] *But cf. Carey*, 57 F.4th at 993 ("The State's response—and, by extension, the state court's decision—refers *only* to Florida law. Because the response does not refer at all to federal law, it is already 'clear from the opinion itself that the state court relied upon' state grounds and not federal grounds when it denied relief." (citing *Michigan v. Long*, 463 U.S. 1032, 1042 (1983))).

[18] The State's response characterized *Hedgeman* as finding "that a conviction for murder in the second degree by a non-shooting principal could be upheld if the crime charged was a lesser included offense of murder in the first degree premeditated murder and there was sufficient evidence *to prove the crime*." R. 415 (emphasis added). However, what the *Hedgeman* court said was that the defendant "could have only been convicted of second-degree murder as a lesser included of first-degree premeditated murder, if there was sufficient evidence *to establish that he was a principal to the crime*." *Hedgeman*, 661 So. 2d at 88 (emphasis added).

*v. State*, 677 So. 2d 1299 (Fla. 4th DCA 1996), explains why it is appropriate for the second degree murder instruction to state that it is not necessary to prove intent to cause death, even when the defendant is being tried on a principal theory. In *Jamerson*, the Fourth DCA affirmed a conviction for second degree murder as a principal without a written decision. *See id.* In her dissenting opinion, Justice Pariente noted her agreement "with the majority that there is sufficient evidence from which the jury could have found each co-defendant guilty of second-degree murder by being involved in *some aspect* of a vicious and senseless beating of a defenseless human being." *Id.* at 1299 (emphasis added). She explained that death was a foreseeable result and that "the fact that each defendant may not have intended to kill the victim [does not] exonerate the defendant because second-degree murder is a general intent crime." *Id.* Although Justice Pariente ultimately agreed with the defendants' position that reversal for a new trial was warranted,[19] she disagreed with their "position that before being convicted of second-degree murder as a principal a defendant must have known that a murder was going to happen." *Id.* at 1301. Once again, she noted that "[s]econd-degree murder is a general intent crime and thus does not require proof of a premeditated design to effect the death of the person." *Id.* Moreover, Justice Pariente explicitly addressed the requirement in the standard jury instructions – on guilt as a principal – that "the defendant had a conscious intent that the criminal act be done." *Id.* Specifically, she explained that with respect to "the intent necessary to convict of second-degree murder [] there need not be a conscious intent to participate in the murder, but *only a conscious intent to participate in a depraved-mind act*." *Id.* (emphasis added).

---

[19] The only reason Justice Pariente recommended reversal for a new trial was because she thought that the trial court provided a confusing answer to a jury question, and she believed that the trial court's answer could have misled the jury. *See id.* at 1299-1301.

In her dissent in *Jamerson*, Justice Pariente relied, in part, on another Florida appellate decision, *Wright v. State*, 402 So. 2d 493 (Fla. 3d DCA 1981).  In *Wright*, the court explained:

> Because we find the rule in Florida to be that aiders and abettors may be convicted either upon proof of their own state of mind or upon proof that they knew that the person aided had the requisite state of mind, evidence that the aider and abettor knew that the principal had a premeditated design to kill or a depraved mind, will support the aider and abettor's conviction for first or second degree murder.

*Wright*, 402 So. 2d at 499.  *Wright* underscores that the jury in this case could find the conscious intent requirement to be satisfied – for purposes of convicting Petitioner of second degree murder as a principal – so long as Petitioner either had a depraved mind or knew that one of her co-defendants had a depraved mind, even if Petitioner did not know that one or more of her co-defendants had a premeditated intent to kill.

Thus, in this case, all that was needed to satisfy the conscious intent requirement of the jury instructions on principals, for purposes of convicting Petitioner of second degree murder as a principal, was evidence that Petitioner had "a conscious intent to participate in a depraved-mind act."  *Jamerson*, 677 So. 2d at 1301 (Pariente, J., dissenting).  In other words, as the state trial court stated when providing jury instructions on the lesser included crime of second degree murder, "it [was] not necessary for the State to prove [Petitioner] had an intent to cause death."  [DE 9-3] at 200; *see also* R. 34.  Therefore, the instruction that it was not necessary to prove that Petitioner had an intent to cause death was not erroneous and did not negate the conscious intent requirement of the instruction on principals.  And because the instructions were not erroneous, counsel did not perform deficiently in failing to object to the jury instructions on second degree murder.  After all, "an attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."  *Pinkney*, 876 F.3d at 1297 (citations omitted); *see also Chandler*, 240 F.3d at 917 (recognizing that counsel is "not ineffective for failing to raise

a nonmeritorious issue").[20]   Additionally, because the instructions were not erroneous, trial counsel's failure to object did not prejudice Petitioner.  At the very least, the reasoning of *Wright* and Justice Pariente's dissent in *Jamerson* demonstrate that the state court's determination – that Petitioner's reliance on *Hedgeman* was misplaced and that Petitioner failed to establish that counsel was ineffective by not objecting to the jury instructions – was reasonable.

### 3.  Ground III

The Petition should be denied as to Ground III.  In Ground III, Petitioner raises a claim of ineffective assistance of *appellate* counsel.  According to Petitioner, the jury in her case rendered a truly inconsistent verdict on legally interlocking charges by acquitting Petitioner of conspiracy to commit first degree murder (Count II) while at the same time finding her guilty (on Count I) on the lesser included crime of second degree murder as a principal.  Petitioner contends that although her trial counsel preserved the true inconsistent verdict issue, her appellate counsel was deficient by failing to raise the issue on direct appeal.  Had counsel raised the issue on appeal, Petitioner asserts that she would have prevailed on the issue, which she contends would have resulted in her

---

[20] Counsel's performance was also not deficient for an additional, independent reason.  As indicated above, the jury instructions at issue were consistent with Florida's standard jury instructions.  Significantly, "[u]nder Florida law, 'standard jury instructions are presumed correct'"; therefore, "counsel *cannot* be ineffective for failing to object to a standard instruction *unless* the Florida Supreme Court had invalidated that instruction *before trial*."  *Forbes v. Sec'y, Dep't of Corr.*, No. 20-60009-CIV, 2022 WL 17082912, at *14 (S.D. Fla. Nov. 18, 2022) (citations omitted); *see also Fla. Dep't of Corr. v. Fana*, 593 F. App'x 954, 955-58 (11th Cir. 2014); *Parker v. Sec'y, Fla. Dep't of Corr.*, 555 F. App'x 870, 874-75 (11th Cir. 2014); *McCarthy v. Sec'y, Dep't of Corr.*, No. 8:19-CV-2109-VMC-SPF, 2022 WL 3042443, at *10 (M.D. Fla. Aug. 2, 2022); *Jenkins v. Sec'y, Dep't of Corr.*, No. 1:19-CV-5-TKW-GRJ, 2021 WL 5508609, at *8 (N.D. Fla. Oct. 21, 2021), *report and recommendation adopted*, 2021 WL 5506472 (N.D. Fla. Nov. 24, 2021); *Wilson v. Sec'y, Dep't of Corr.*, No. 8:14-CV-29-SDM-AAS, 2021 WL 1214923, at *12 (M.D. Fla. Mar. 31, 2021); *Lukehart v. State*, 70 So. 3d 503, 520 (Fla. 2011); *Overton v. State*, 976 So. 2d 536, 566 (Fla. 2007); *Rodriguez v. State*, 919 So. 2d 1252, 1272 (Fla. 2005); *Gamble v. State*, 877 So. 2d 706, 712 (Fla. 2004); *Vining v. State*, 827 So. 2d 201, 214-15 (Fla. 2002); *Thompson v. State*, 759 So. 2d 650, 665 (Fla. 2000).

conviction and sentence being vacated.  Therefore, Petitioner contends that the failure to raise the issue on appeal prejudiced her.

First, some background on Florida law regarding the issue of inconsistent verdicts: Florida law generally permits inconsistent verdicts "because jury verdicts can be the result of lenity and therefore do not always speak to the guilt or innocence of the defendant." *Senelus v. Att'y Gen., Fla.*, 806 F. App'x 806, 809 (11th Cir. 2020) (quoting *State v. Powell*, 674 So. 2d 731, 733 (Fla. 1996)).  However, "one exception to the general rule allowing inconsistent verdicts" exists. *Powell*, 674 So. 2d at 733.  "This exception, referred to as the 'true' inconsistent verdict exception, comes into play when verdicts against one defendant on legally interlocking charges are truly inconsistent." *Id.*  "[T]rue inconsistent verdicts are 'those in which an acquittal on one count negates a necessary element for conviction on another count.'" *Id.* (citation omitted); *see also Senelus*, 806 F. App'x at 809 ("There is an exception to that general rule: if a defendant is acquitted of one charge and found guilty of another, and the charge of which he is acquitted is an 'essential element' of the charge of which he is found guilty, the guilty verdict cannot stand.").  Thus, as an example, a verdict is truly inconsistent where a defendant is convicted of felony murder but, at the same time, acquitted of the underlying felony. *Senelus*, 806 F. App'x at 809 (citing *Mahaun v. State*, 377 So. 2d 1158, 1161 (Fla. 1979)).  Of course, that is because there is no *felony murder* without a *felony*.  At any rate, where "the jury's verdicts are 'logically inconsistent' under the facts of the case but not 'legally inconsistent,' Florida law permits them to stand." *Id.* (citing *Fayson v. State*, 684 So. 2d 270, 271-72 (Fla. 1st DCA 1996)); *see also Morris v. State*, 349 So. 3d 491, 493 (Fla. 1st DCA 2022) ("While factually inconsistent verdicts are permissible in Florida because they result from a jury's inherent authority to acquit, a legally inconsistent verdict cannot stand. A

legally inconsistent verdict occurs when a finding of not guilty on one count negates a necessary element for conviction on another count." (internal citation omitted)).

As an initial matter, even if this Court were to agree with Petitioner that the jury rendered a "truly inconsistent verdict" (as discussed below, I do not agree), this Court could not grant relief on Ground III.  That is because, although Ground III presents an ineffective assistance of counsel claim, the question of whether the jury's verdict in this case was "truly inconsistent" is an issue of state law that the state court had to decide in denying Petitioner's Rule 9.141 Petition.  *See Pinkney*, 876 F.3d at 1295-99.  Specifically, both the deficient performance and prejudice prongs for Ground III turn on whether the jury rendered a truly inconsistent verdict,[21] and this truly inconsistent verdict issue is an issue of state law.  *Dawkins v. Inch*, No. 19-24572-CIV, 2021 WL 309510, at *2 (S.D. Fla. Jan. 29, 2021) (citing *Brown v. State*, 959 So. 2d 218, 220 (Fla. 2007)).  As noted above, "although 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [federal courts] 'must defer to the state's construction of its own law' when the validity of the claim that appellate counsel failed to raise turns on state law."  *Pinkney*, 876 F.3d at 1295 (citations omitted).

One might perhaps question how this Court can determine that the Fourth DCA rejected the issue presented in Ground III of the Petition on state law grounds.  After all, the only time that the argument in Ground III was presented to a state court was in the context of Petitioner's Rule 9.141 Petition, which was denied without explanation.  As such, there is "no underlying state court reasoning to review."  *Blackmon v. Sec'y, Dep't of Corr.*, 34 F.4th 1014, 1022 (11th Cir. 2022).

---

[21] With the exception of the last paragraph of Ground III of the Petition, Ground III is virtually identical to the first claim that Petitioner raised in her Rule 9.141 Petition.  *Compare* [DE 3] at 24-26, *with* R. 323-27.

But in such a circumstance, this Court is "required to 'determine what arguments or theories . . . could have support[ed] the [DCA's] decision.'" *Id.* at 1022-23 (quoting *Richter*, 562 U.S. at 102).

Here, there are essentially two theories that could have supported the Fourth DCA's decision to deny Petitioner's Rule 9.141 Petition on the issue of whether the jury rendered a truly inconsistent verdict. First, the Fourth DCA could have decided that the jury's verdict was not truly inconsistent (as a matter of state law), either because the verdict was only "logically inconsistent" or not inconsistent at all. Second, the Fourth DCA could have decided that even if the jury's verdict was truly inconsistent, appellate counsel's failure to raise the issue on appeal did not amount to ineffective assistance of counsel under *Strickland*. *Cf. Pinkney*, 876 F.3d at 1298. But this second theory would be an unreasonable application of *Strickland*. That is because a true inconsistent verdict "cannot stand" under Florida law. *Morris*, 349 So. 3d at 493. In other words, if the jury rendered a truly inconsistent verdict, and counsel raised the issue on appeal (which both parties appear to agree was preserved), Petitioner's conviction would have been reversed (i.e., prejudice). And under the circumstances, any competent appellate counsel would have raised the issue if the verdict was truly inconsistent (i.e., legally inconsistent).

Importantly, though, "when faced with a summary state court decision that is subject to more than one interpretation, [courts] must choose the interpretation of the decision that is consistent with the state court knowing and correctly applying federal law, including ineffective assistance of counsel law." *Pinkney*, 876 F.3d at 1298. Giving the Fourth DCA "the benefit of the doubt and assuming," as this Court must, that the Fourth DCA "knew and followed *Strickland* and other Supreme Court decisions on ineffective assistance of counsel," this Court must "conclude that the [Fourth DCA] would have granted [Petitioner] relief if it had decided that" the verdict here was truly inconsistent. *Id.* Therefore, the Fourth DCA must have rejected the truly

36

inconsistent verdict argument in Petitioner's Rule 9.141 Petition on the ground that the verdict was not truly inconsistent – as a matter of Florida law. *Cf. id.* at 1299.  Because the Fourth DCA's denial of Petitioner's true inconsistent verdict argument must have been rejected on state law grounds, it is not this Court's "role to examine the propriety of" that determination of state law. *Id.* (citations omitted); *see also Dawkins*, 2021 WL 309510, at *2 ("Because 'it is not in the province of a federal habeas court to re-examine state court determinations on state-law questions,' the Court here cannot reexamine whether or not the verdict constitutes a truly inconsistent one." (citation omitted)).

Regardless, even if the true inconsistent verdict issue were an issue for this Court to decide, this Court should conclude that the jury's verdict was not truly inconsistent.  As a brief recap, on Count I, the jury found Petitioner guilty of (the lesser included crime of) second degree murder as a principal, and the jury found her co-defendants guilty of first degree premeditated murder.  On Count II (conspiracy to commit first degree murder), the jury found Petitioner not guilty, but it found her co-defendants guilty.

The jury instructions setting forth the elements for second degree murder and setting forth the elements to be convicted on a principal theory are set forth in the preceding section (on Ground II).  Again, the principal elements included in the jury instructions were that Petitioner (1) "had a conscious intent that the criminal act be done"; and (2) "did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit or attempt to commit the crime."  [DE 9-3] at 205; *see also* R. 40.  With respect to Count II (conspiracy charge), the state trial court provided the following jury instructions:

> As to Count 2 of the Indictment, to prove the crime of conspiracy, the State must prove the following two elements beyond a reasonable doubt:
>
> First, the intent of Michael Bilotti, Christin Bilotti, and John Pacchiana was that the offense of first degree murder would be committed.

And, Second, in order to carry out the intent, Michael Bilotti, Christin Bilotti, and John Pacchiana agreed, conspired, combined, or confederated with each other to cause first degree murder to be committed either by them, or one of them, or by some other person.

[DE 9-3] at 204; *see also* R. 39.

Petitioner argues that the verdict was truly inconsistent because, "[b]y finding [Petitioner] not guilty of the conspiracy to commit murder, the jury necessarily found that [Petitioner] did not know [her co-defendants] intended to kill [the victim]."  [DE 3] at 25.  Based on Petitioner's assertion that the jury found she did not know her co-defendants intended to kill the victim, Petitioner argues that the jury's verdict of guilt on "second-degree murder as a non-present principal is legally inconsistent" with the jury finding Petitioner not guilty on Count II.  *Id.* Assuming without deciding that the only reasonable inference – from the jury finding Petitioner not guilty on Count II – is, as Petitioner asserts, that "the jury necessarily found [Petitioner] did not know [her co-defendants] intended to kill [the victim]," that does not render the jury's verdict truly inconsistent.  As discussed above (regarding Ground II), to convict Petitioner of the lesser included crime of second degree murder as a principal, the jury did not need to find Petitioner intended premeditated murder or that she knew her co-defendants intended premediated murder. Rather, to satisfy the "conscious intent" requirement for second degree murder, the jury only had to find that Petitioner had "a conscious intent to participate in a depraved-mind act." *Jamerson*, 677 So. 2d at 1301 (Pariente, J., dissenting); *see also Wright*, 402 So. 2d at 499.  Therefore, even accepting the implication Petitioner draws from the jury's not guilty verdict on the conspiracy count, that not guilty verdict was not truly inconsistent (if even inconsistent at all) with the jury's verdict of guilt on second degree murder as a principal.

Consequently, had Petitioner's appellate counsel raised the foregoing true inconsistent verdict argument on direct appeal, such an argument would have been meritless and unsuccessful.

In other words, counsel did not act deficiently by failing to raise the argument, and counsel's failure to raise the argument did not prejudice Petitioner's appeal. *See Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." (citations omitted)); *Chandler*, 240 F.3d at 917 (recognizing that counsel is "not ineffective for failing to raise a nonmeritorious issue"). Thus, Petitioner's claim for ineffective assistance of appellate counsel must be rejected.

## V. REQUEST FOR EVIDENTIARY HEARING

Petitioner has not shown that an evidentiary hearing is necessary. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Petitioner has the burden to establish the need for an evidentiary hearing. *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[T]he district court need not conduct an evidentiary hearing if the record refutes the petitioner's factual allegations, otherwise prevents habeas relief, or conclusively demonstrates that the petitioner was not denied effective assistance of counsel." *Martinez v. Sec'y, Fla. Dep't of Corr.*, 684 F. App'x 915, 926 (11th Cir. 2017) (citing *Schriro*, 550 U.S. at 474). A Petitioner's conclusory allegations fail to demonstrate that an evidentiary hearing is warranted. *Chavez*, 647 F.3d at 1061.

Furthermore, the deferential standards of habeas review under § 2254 apply in determining whether an evidentiary hearing is appropriate. *See Schriro*, 550 U.S. at 474 ("If district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts."). Thus, "before a habeas petitioner may be entitled

to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers*, 776 F.3d at 1295.

Here, Petitioner fails to carry her burden.  She had not demonstrated the existence of any basis to warrant an evidentiary hearing.  Indeed, she merely requests an evidentiary hearing (in the alternative) in a conclusory fashion at the end of each ground without explaining why an evidentiary hearing is warranted.  *See* [DE 3] at 20, 24, 26 ("Alternatively, this Court should provide Bilotti with the opportunity to develop the claim at a hearing, which the state courts did not provide for.").  At any rate, an evidentiary hearing would not change the result, and the record prevents habeas relief for the reasons discussed above.  Notably, for Ground I, Petitioner's primary challenge pertains to a *legal* issue.  The only factual issue concerns whether any juror was actually biased, and as discussed above, that issue is determined *based upon the face of the voir dire record* – meaning an evidentiary hearing would be pointless.  *See supra* note 14.  And for Grounds II and III, Petitioner's argument turns on a legal issue – whether she could be convicted of second degree murder as a principal if she did not know her co-defendants intended to kill the victim.[22]  As discussed above, the answer is yes (as a matter of law).  No factual issues need to be resolved. Rather, the record and applicable law make clear that the Petition is due to be denied.  Therefore, an evidentiary hearing is unnecessary.

---

[22] For Ground III, the claim can be disposed of before even reaching this legal issue given that the state court's denial of relief must have been predicated on an issue of state law.  *See supra* Part IV.B.3.

## VI. <u>CERTIFICATE OF APPEALABILITY</u>

A habeas petitioner seeking to appeal a district court's final order denying his habeas petition has no absolute entitlement to appeal; rather, he must obtain a certificate of appealability to do so where "the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A court should only issue a certificate of appealability if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Upon consideration of the record, the Court should deny a certificate of appealability because reasonable jurists would not find the assessment of Petitioner's claims debatable or wrong. Notwithstanding, if Petitioner does not agree, Petitioner may bring this argument to the attention of the District Judge in objections to this Report.

## VII. <u>CONCLUSION</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** the Petition [DE 1].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28

U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

   **DONE AND SUBMITTED** in Fort Lauderdale, Florida this 5th day of April 2023.

            *Jared Strauss*
            **Jared M. Strauss**
            **United States Magistrate Judge**